O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT WHITE, et al.,<br><br>            Plaintiffs,<br><br>     v.<br><br>MICHAEL B. DONLEY, Acting Secretary of the Air Force,<br><br>            Defendant. | CV 05-7728 ABC (FMOx)<br><br>ORDER RE: DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND PLAINTIFF'S REQUEST TO DISMISS INDIVIDUAL CLAIMS |

Pending before the Court is Defendant Michael B. Donley's ("Defendant") Motion for Partial Summary Judgment ("Motion"), filed on July 24, 2008. Plaintiff Vincent White[1] ("Plaintiff" or "White"), *pro se*, filed an Opposition, and Defendant filed a Reply. Also before the Court is Plaintiff's Request to Dismiss Individual Claims Without Prejudice to Refile ("Request"), pursuant to Federal Rule of Civil Procedure 41(a)(2). Defendant filed an Opposition to the Request, and Plaintiff filed a Response. The Court found these matters appropriate

---

[1] Leonard White is also a plaintiff in this case. However Defendant's Motion addresses Vincent White's claims only. As such, all references herein to "Plaintiff" are to Vincent White.

for resolution without oral argument, vacated the hearing, and took the matters under submission. Upon consideration of the materials submitted by the parties and the case file, the Court hereby **GRANTS** Defendant's Motion and **DENIES** Plaintiff's Request.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed this action on October 28, 2005. The First Amended Complaint ("FAC") asserts two causes of action: (1) individual claims by Vincent and Leonard White for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, and (2) a proposed class action for race discrimination and retaliation at Defendant's Edwards Air Force Base, naming Vincent and Leonard White as class representatives. On February 4, 2008, the Court granted Defendant's Motion to Dismiss Plaintiff's class claim on the ground that Plaintiff, appearing pro se, may not appear as an attorney for others and because a *pro se* plaintiff cannot adequately protect the interest of the class as required by Fed. R. Civ. Proc. 23. See C.E. Pose Equity Trust v. United States, 818 F.2d 696, 697 (9th Cir. 1987); see also Hallford v. California Correctional Peace Officers Ass'n, 2007 WL 3046047, *5 (E.D. Cal. October 18, 2007).

As such, the only remaining claim is the individual racial discrimination and retaliation claim under Title VII based on Defendant's failure to hire Plaintiff for various vacancies at Edwards Air Force Base ("EAFB"). In discovery, Plaintiff produced a spreadsheet listing 31 positions for which he applied at EAFB; Plaintiff was hired for none of these positions. See Pinchas Decl. Ex. 2. Defendant now moves for summary adjudication of Plaintiff's claim insofar as it is based upon 25 of these 31 vacancies.

1  Specifically, Defendant contends that Plaintiff failed to timely
2  exhaust his administrative remedies with respect to positions 1-5, 8-
3  18, 23, and 26-28; that positions 12, 22, and 24 were canceled and
4  therefore, by Plaintiff's own admission, are not in issue in this
5  lawsuit; and that Plaintiff, by his own admission, was not qualified
6  for positions 29 and 30.  Defendant is <u>not</u> moving for judgment with
7  respect to claims based on positions 6, 7, 19, 20, 21, 25, and 31.

Plaintiff's Opposing memorandum admits many of Defendant's material facts and, insofar as it purports to dispute facts, fails to point to evidence demonstrating the existence of a genuine dispute. Furthermore, Plaintiff failed to file a Statement of Genuine Issues of Material Fact, as required by Local Rule 56-2.[2]  Accordingly, Plaintiff's Opposition does not raise a triable issue of material fact as to his claims based on the 25 positions as to which Defendant is moving.

## II.   PRELIMINARY MATTERS

Although Plaintiff's Opposition fails to raise a genuine issue of material fact, he makes three procedural requests.  The Court will address these matters before reaching the merits of Defendant's Motion.

First, along with his Opposition, Plaintiff filed a Rule 56(f) Affidavit seeking a continuance of the Motion to permit him to conduct additional discovery.  The Court **DENIES** this request.  Rule 56(f)

---

[2]  Local Rule 56-2 states, "Any party who opposes the motion shall serve and file with the opposing papers a separate document containing a concise 'Statement of Genuine Issues' setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated."

requires a showing that the plaintiff was diligent, and the request for discovery must be based on more than mere speculation that discovery may yield probative evidence. See Mackey v. Pioneer Nat'l Bank, 867 F.2d 520, 523 (9th Cir. 1989). Here, Plaintiff has made no such showing; indeed, in this more than three-year-old case, Plaintiff admits that he has not conducted any discovery regarding his individual claims. See Opp'n brief at 5. Plaintiff's related request that the Court delay deciding this Motion pending his appeal under Rule 23(f) of this Court's dismissal of his class action claim is also unavailing. Rule 23(f) expressly states that an appeal does not stay proceedings in the district court. As such, the pendency of Plaintiff's appeal was not good cause for his inaction in the ongoing litigation before this Court. Furthermore, the Ninth Circuit has dismissed Plaintiff's appeal for lack of jurisdiction because this Court's order was neither final nor appealable. See Ninth circuit Order, Docket No. 65, filed August 13, 2008. Plaintiff's failed Rule 23(f) appeal presents no justification for continuing the Motion.

Second, Plaintiff contends that the Court did not warn him of the need to file an affidavit in support of his Rule 56(f) request. However, regardless of whether the Court warned Plaintiff, he was apparently aware of the need to file an affidavit because he did, in fact, file one. Insofar as Plaintiff may be asserting that, as a *pro se* litigant, he is entitled to other advice from the Court concerning opposing a summary judgment motion, there is no such requirement. Although *pro se* litigants are sometimes accorded some leniency, and although *pro se* prisoners may be entitled to "fair notice" under Hudson v Hardy, 412 F.2d 1091 (D.C. Cir. 1968), there is no requirement that the Court must instruct *pro se* litigants in ordinary

4

civil cases of what would be necessary to defeat a motion for summary judgment.  See Jacobsen v. Filler, 790 F.2d 1362 (9th Cir. 1986) (concluding that the district court did not have to inform plaintiff of the need to file affidavits or other responsive matter before granting summary judgment against him).  There are many reasons why the Court will not undertake giving notice to ordinary *pro se* litigants, including that doing so would amount to injecting the Court into the adversary process on behalf of certain litigants, would "entail the district court's becoming a player in the adversary process rather than remaining its referee," and would invite undesirable, open-ended participation by the court in the summary judgment process.  Id.  In short, to give Plaintiff advice would be to grossly overstep the Court's role.

Plaintiff's third request, raised in a separate document, is that the Court dismiss his individual claims without prejudice to their refiling, pursuant to Fed. R. Civ. Proc. 41(a)(2).  Plaintiff's motivations for seeking dismissal appear to be to avoid an adverse ruling on Defendant's summary judgment motion, to create appellate jurisdiction over the Court's order dismissing his class claims, and to allow his individual claims to be litigated before the Equal Employment Opportunity Commission ("EEOC").  None of these reasons for seeking dismissal without prejudice are valid.

Rule 41(a)(2) provides that "an action may be dismissed at the plaintiff's request only by court order on terms that the court considers proper."  "The purpose of the rule is to permit a plaintiff to dismiss an action without prejudice so long as the defendant will not be prejudiced, or unfairly affected by dismissal."  Stevedoring Services of America v. Armilla Intern. B.V., 889 F.2d 919, 921 (9th

Cir. 1989) (citations omitted). "A motion for voluntary dismissal under Rule 41(a)(2) is addressed to the district court's sound discretion and the court's order will not be disturbed unless the court has abused its discretion." Id. (citations omitted).

Here, Defendant would be prejudiced by the dismissal of Plaintiff's claims without prejudice. This action has been pending for nearly three years, Defendant has expended considerable effort in defending it, and dismissal at this late stage would circumvent Defendant's pending claim-dispositive motion. Dismissing the claims without prejudice would harm Defendant's legal interest in the timely final adjudication of Plaintiff's long-pending claims. Relatedly, the mere temporary avoidance of a claim-dispositive motion is not a legitimate reason to seek dismissal of those claims without prejudice; indeed, the avoidance of an adverse ruling is an abusive reason to seek dismissal. See, e.g., Terravona v. Kincheloe, 852 F.2d 424, 429 (9th Cir. 1988) (affirming denial of voluntary dismissal where summary judgment motion had been pending prior to the filing of the Rule 41(a)(2) motion). Nor will the Court dismiss the claims to manufacture appellate jurisdiction, a practice that the Ninth Circuit has expressly disapproved. See, e.g., Adonican v. City of Los Angeles, 297 F.3d 1106, 1107 (9th Cir. 2002) (dismissing appeal where parties attempted to manufacture finality by dismissing some of Plaintiff's claims in order to appeal partial dismissal) (citing James v. Price Stern Sloan, Inc., 283 F.3d 1064, 1066 (9th Cir. 2002) (stating that although a dismissal without prejudice can be a final, appealable order, there must be "no evidence [one or both of the parties] attempted to manipulate our appellate jurisdiction by artificially 'manufacturing' finality.")) Finally, the Court sees no

reason to dismiss Plaintiff's claims so that he may litigate them before the EEOC instead. As set forth in the Umatum Declaration submitted with Defendant's Motion, it is too late for Plaintiff to raise his claims anew before the EEOC or otherwise pursue his claims there. The Court therefore **DENIES** Plaintiff's Rule 41(a)(2) request to dismiss his claims.

### III. UNDISPUTED FACTS

Upon review of the papers, the Court finds that the following material facts are undisputed:

1. In 2000, Plaintiff Vincent White ("Plaintiff" or "White") learned that he would be terminated from his auditor trainee position at the Defense Contract Audit Agency ("DCAA"). Transcript of Deposition of Vincent White ("Tr.") at 87:22-25.

2. Thereafter, between September 2000 and June 2006, White applied for 31 positions at Edwards Air Force Base ("EAFB") but was unsuccessful. These positions are listed on a spreadsheet White created.[3] See Pinchas Decl. Ex. 2.

**Facts Relevant to Motion as to Spreadsheet Positions 1-5 and Plaintiff's First EEOC Complaint:**

3. White stated in a May 11, 2001 email that he had decided to file a complaint regarding his non-selections for a number of positions at EAFB. Tr. 138:16-139:17; Pinchas Decl Ex. 3.

4. On July 5, 2001, White first sought EEO counseling regarding employment discrimination at EAFB with counselor Mary Pablo. White

---

[3] This Order's references to the "spreadsheet position" numbers of the vacancies for which Plaintiff applied correspond to the 31 numbered positions identified in Plaintiff's spreadsheet.

7

alleged to Pablo that he was not hired for six vacant positions at EAFB.  Pablo Decl. ¶¶ 2, 4.

5.   White was counseled regarding the six positions for which he was not selected, identified by Edwards AFB Delegated Examining Unit (DEU) number and position title, as: (1) EAFB 00-070A, Accounting Technician; (2) EAFB 01-006, Budget Assistant; (3)  EAFB 01-020, Budget Analyst; (4) EAFB 01-110A, Contract Negotiator (5) EAFB 01-122, Accounting Technician; and (6) EAFB 01-127, Financial Management Analyst (**spreadsheet positions 1-6**). See Pinchas Decl. Ex. 2.

6.   The EAFB EEO office accepted White's allegations for investigation because he claimed that he first became aware that he had been a victim of discrimination on June 4, 2001.  Pablo Decl. ¶¶ 4, 7.  However, White actually believed on or before May 11, 2001 that he had been a victim of discrimination.  Pinchas Decl. Ex. 3.

7.   With respect to **spreadsheet position 1**, Accounting Technician, 00-70A, this position was advertised from August 28, 2000 through September 11, 2000.  See Pinchas Decl. Ex. 2.  White claims he received notification of his non-selection on or about February 7, 2001.  Tr. at 383:12-23.

8.   As to **spreadsheet position 2**, Budget Assistant, 01-006, the vacancy closed October 18, 2000.  Pinchas Decl. Ex. 2.  Although White claims he did not receive notification of his non-selection, whenever he did not receive a response to an application for a long period, he would assume that he was not selected and file an EEO complaint.  Tr. 475:3-24; 485:13-18.

9.   **Spreadsheet position 3**, Budget Analyst, 01-020, was canceled by Defendant.  Tr. 393:9-394:3.

10.  White learned by email on May 11, 2001 that he had not been

selected for **spreadsheet positions 4 and 5**, Contract Negotiator, 01-010A, and Accounting Technician, 01-122. Tr. 138:16-139:17; Pinchas Decl Ex. 3.

11. White was given a final interview regarding his first EEO complaint on August 23, 2001. Pablo Decl. ¶ 8. On the same date, White was notified by his EEO counselor, in writing, that if he wished to proceed, he must file a formal complaint of discrimination with the EEO manager within 15 calendar days of receipt of the notice, and that if he wished to add issues on which he had not been counseled, those issues may be dismissed and referred for counseling. Pablo Decl. ¶ 8 and Ex. A.

12. On September 5, 2001, White filed his first EEO complaint stating that he was discriminated against in connection with spreadsheet positions 1-6.[4] Umatum Decl. ¶ 4(b).

13. On June 27, 2003, White filed a motion before the Equal Employment Opportunity Commission ("EEOC") administrative law judge ("ALJ") to amend his first EEO complaint to add 15 positions for which he was not hired after his notice of final interview. Umatum Decl. ¶ 4(e)-(f). The ALJ denied White's Motion to Amend on the ground that the additional non-selections were discrete hiring actions and new alleged incidents of discrimination as to which White had to seek counseling from the EEO before filing a complaint. Id. ¶ 4(f).

---

[4] White later sought to add a claim regarding a seventh position, EAFB 01-193, Accounting Technician (**spreadsheet position 7**) to his first complaint. Although Plaintiff did not seek counseling prior to bringing this claim, the EEO nevertheless investigated it. Umatum Decl. ¶ 4(c). However, Defendant is not moving with respect to spreadsheet position 7. Nor is Defendant moving with respect to spreadsheet position 6. As such, the Court will disregard allegations concerning positions 6 and 7 for purposes of this Motion.

**Facts Relevant to Motion as to Spreadsheet Positions 8-11, 13-17, 22, 24 and Plaintiff's Second EEOC Complaint:**

14. On July 14, 2003, White sought initial counseling regarding his claims of discrimination as to 15 additional positions at EAFB for which he was not hired. Thereafter, on August 8, 2003, White filed his second EEO complaint. Umatum Decl. ¶ 5(a).

15. The 15 positions White sought to include in his second EEO complaint, identified by Edwards AFB DEU number and position title, were: (1) 01-193, Accounting Technician, which shall be omitted, as discussed below; (2) 01-213, Budget Analyst (3) 01-235, Accounting Technician; (4) 01-246, Financial Management Specialist; (5) 02-004, Cost Analyst; (6) 02-049, Budget Analyst; (7) 02-068, Contract Negotiator; (8) 02-163, Accounting Technician; (9) 02-195, Financial Management Specialist; (10) 02-204, Budget Analyst; (11) 03-041, Financial Analyst; (12) 03-040, Accounting Technician; (13) 03-043, Accountant; (14) 03-054, Budget Analyst; and (15) 03-169, Accounting Technician. (**Spreadsheet positions 7-11, 13-17, 19-22, 24**) See Umatum Decl. ¶ 5(a).[5]

16. On September 5, 2003, the agency dismissed White's second EEO complaint as untimely. Umatum Decl. ¶ 5(b).

17. White appealed this dismissal and the EEOC Office of Federal Operations ("OFO") affirmed the agency action on December 6, 2004, **except as to spreadsheet positions 19-22 and 24.** Umatum Decl. ¶ 5(c) and Ex. 2 thereto.

---

[5] Although Plaintiff's second EEO complaint included Accounting Technician position, EAFB 01-193 (**spreadsheet position 7**), that position had already been investigated in connection with White's first EEO complaint, see fn. 4, and, in any case, is not a subject of this motion. As such, the second complaint will be discussed as asserting claims based on 14 additional positions, not 15.

18.  The OFO decision, mailed on December 6, 2004, advised White of his right to file a civil action within 90 days of receipt of the decision.  Umatum Decl. Ex. 2.  However, White did not file this lawsuit until October 28, 2005.

19.  With respect to the position Budget Analyst, 01-213 (**spreadsheet position 8**), this vacancy closed August 27, 2001.  See Pinchas Decl. Ex. 2.  White did not seek EEO counseling as to this position until July 2003.  Umatum Decl. ¶ 5(a).

20.  With respect to the position Accounting Technician, 01-235 (**spreadsheet position 9**), White received notification of his non-selection on or about October 24, 2001.  Pinchas Decl. Ex. 2.  White did not seek EEO counseling as to this position until July 2003.  Umatum Decl. ¶ 5(a).

21.  With respect to the position Financial Management Specialist, 01-246 (**spreadsheet position 10**), White received notification of his non-selection on or about November 29, 2001.  Exhibit 2.  White did not seek EEO counseling as to this position until July 2003.  Umatum Decl. ¶ 5(a).

22.  With respect to the position Cost Analyst, 02-004 (**spreadsheet position 11**),  White received notification of his non-selection on or about February 13, 2002.  Pinchas Decl. Ex. 2.  White did not seek EEO counseling as to this position until July 2003.  Umatum Decl. ¶ 5(a).

23.  With respect to the position Budget Analyst, 02-049, (**spreadsheet position 13**),  White received notification of his non-selection on or about March 28, 2002.  Pinchas Decl. Ex. 2.  White did not seek EEO counseling as to this position until July 2003.  Umatum Decl. ¶ 5(a).

24. With respect to the position Contract Negotiator, 02-068 (**spreadsheet position 14**), White received notification of his non-selection on or about March 19, 2002. Pinchas Decl. Ex. 2. White did not seek EEO counseling as to this position until July 2003. Umatum Decl. ¶ 5(a).

25. With respect to the position Accounting Technician, 02-163 (**spreadsheet position 15**), White received notification of his non-selection on or about June 27, 2002. Pinchas Decl. Ex. 2. White did not seek EEO counseling as to this position until July 2003. Umatum Decl. ¶ 5(a).

26. With respect to the position Financial Management Specialist, 02-195 (**spreadsheet position 16**), White received notification of his non-selection on or about August 5, 2002. Pinchas Decl. Ex. 2. White did not seek EEO counseling as to this position until July 2003. Umatum Decl. ¶ 5(a).

27. With respect to the position Budget Analyst, 02-204 (**spreadsheet position 17**), White received notification of his non-selection on or about September 12, 2002. Pinchas Decl. Ex. 2. White did not seek EEO counseling as to this position until July 2003. Umatum Decl. ¶ 5(a).

**Facts Relevant to Motion as to Spreadsheet Positions 12, 18, 23, 26, 27, 28, 29 and 30:**

28. White received rejection letters for the Budget Analyst 02-021 position (**spreadsheet position 12**) on or about March 19, 2002, and for the Budget Technician 02-2868 position **(spreadsheet position 18**) on November 21, 2002. Pinchas Decl. Ex. 2. White did not file an EEO complaint with respect to either position 12 or 18. See Umatum Decl. ¶¶ 5(a).

1   29.  White never filed any EEO complaint regarding **spreadsheet positions 23, 26, 27 and 28**. See Tr. 131:12-20; 134:12-23; 476:10-18; Umatum Decl. ¶ 9.

    30.  With respect to **spreadsheet position 29**, Budget Analyst, 06MAY540585, White admitted in deposition that he did not qualify for this position. Tr. 476:21-25.

    31.  With respect to **spreadsheet position 30**, Accountant, 06JUN543690, White testified that he has no proof that his non-selection was unlawful. Tr. 477:4-482:8.

**Positions 22 and 24**

    32.  **Spreadsheet positions 22 and 24** were canceled by Defendant. Tr. 472:14-473:14.

### IV.  LEGAL STANDARD

Summary judgment shall be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

If, as here, the non-moving party has the burden of proof at trial, the moving party has no burden to negate the opponent's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party does not have the burden to produce any evidence showing the absence of a genuine issue of material fact. Id. at 325. "Instead, . . . the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of

evidence to support the nonmoving party's case." Id. Once the moving party satisfies this initial burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading . . . [Rather,] the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added).

A "genuine issue" of material fact exists only when the nonmoving party makes a sufficient showing to establish the essential elements of that party's case, and on which that party would bear the burden of proof at trial. Celotex, 477 U.S. at 322-23. An issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. Anderson, 477 U.S. at 250-51. "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. Harper v. Wallingford, 877 F.2d 728, 731 (9th Cir. 1989). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. The "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

"[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues." Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1161 (9th Cir. 1992). The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in favor of the nonmovant. Anderson, 477 U.S. at 255. "On

the other hand, the movant's uncontradicted factual allegations ordinarily are accepted." John v. City of El Monte, 505 F.3d 907, 912 (9th Cir. 2007). Furthermore, the court must view the evidence presented "through the prism of the substantive evidentiary burden." Anderson, 477 U.S. at 254.

## V. DISCUSSION

Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq., an applicant for federal employment must timely exhaust administrative remedies before the agency charged with employment discrimination. See Brown v. General Services Administration, 425 U.S. 820, 832-35 (1976); Vinieratos v. USAF, 939 F.2d 762, 768 (9th Cir. 1991). In order to exhaust his administrative remedies under Title VII, White was required to contact an EEO counselor within 45 days of the matter alleged to be discriminatory. See 29 C.F.R. § 1614.105(a)(1).

White was aware at various times that he had not been selected for **positions 1-5.** However, White had determined, no later than May 11, 2001, that he had been a victim of discrimination with respect to these positions. White first sought EEO counseling with respect to positions 1, 2, 4, and 5 on July 5, 2001. Because more than 45 days elapsed between the date White determined he was discriminated against and the date upon which he sought counseling, White did not timely contact the EAFB EEO counselor with respect to spreadsheet positions 1-5.

White filed a second EEO complaint seeking redress for not being hired for **positions 8-11, 13-17, 19-22, and 24**. The agency dismissed White's complaint as to all of those positions as untimely. White

appealed this dismissal, and in a December 2004 decision the OFO found that White did not timely seek EEO counseling with respect to spreadsheet positions 8-11 and 13-17. Id.  In order to challenge the OFO's decision dismissing his claims, White was required to file this civil action within 90 days. See 29 C.F.R. § 1614.407(c); See also, Jones v. Wynne, 2007 WL 1655405 (N.D. Fla. 2007), aff'd 266 Fed.Appx. 903 (11th Cir. 2008).  White filed this action on October 28, 2005, well more than 90 days after the OFO decision.  As such, White's Complaint is untimely with respect to **positions 8-11 and 13-17.**

Because spreadsheet vacancy **positions 3, 22 and 24** were canceled, White cannot maintain a Title VII action thereon.  See Carter v. Pena, 14 F.Supp.2d 1, 6 (D.D.C. 1997).

White administratively abandoned his claims as to spreadsheet **positions 12, 18, 23, 26, 27 and 28** because he did not seek timely counseling and/or file an EEO complaint with respect to each position. Umatum Decl. ¶¶ 5(a), 9.  Accordingly, any claims regarding such positions must be dismissed for failure to exhaust.  See 29 C.F.R. §§ 1614.105(d), 106(b).  See also Vinieratos, 939 F.2d at 771; Sommatino v. United States of America  255 F.3d 704, 709 (9th Cir. 2001).

Because White admitted that he was not qualified for **position 29** and that he had no proof that his non-selection for **position 30** was unlawful, White cannot meet his burden of proof with respect to spreadsheet positions 29 and 30.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

Finally, each non-selection was a discrete employment practice. See National Railroad Passenger Corporation v. Morgan, 536 U.S. 101, 114 (2002) (rejecting the application of the continuing violation doctrine to discrete acts of alleged discrimination, and holding that

16

1 | "Each incident of discrimination and each retaliatory adverse
2 | employment decision constitutes a separate actionable 'unlawful
3 | employment practice.' [Plaintiff] can only file a charge to cover
4 | discrete acts that 'occurred' within the appropriate time period.")
5 | As such, White's cursory attempt to invoke the continuing violation
6 | doctrine is unavailing.
7 | Accordingly, White's claims regarding spreadsheet positions 1-5,
8 | 8-18, 22-24, 26-30, should be dismissed with prejudice.

## VI. CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Defendant's Motion for Partial Summary Judgment as to Plaintiff's claims based on spreadsheet positions 1-5, 8-18, 22-24, and 26-30. Such claims are hereby **DISMISSED** with prejudice. The Court **DENIES** Plaintiff's Rule 56(f) request and his Request to dismiss pursuant to Rule 41(a)(2).

SO ORDERED.

**DATED:** September 4, 2008

_____
**AUDREY B. COLLINS**
**UNITED STATES DISTRICT JUDGE**